## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

SPENCER D. LAW                                                      PLAINTIFF

VERSUS                          CIVIL ACTION NO: 5:09-cv-116-DCB-JMR

AETNA LIFE INSURANCE COMPANY,
UNITED STATES OF AMERICA A/K/A
DEPARTMENT OF THE NAVY A/K/A
NAVAL INSTALLATIONS COMMAND,
and JOHN AND JANE DOES 1-10                                        DEFENDANTS

### OPINION AND ORDER

This cause comes before the Court on Defendant Aetna's Motion for Reconsideration [docket entry no. 41] of this Court's July 12, 2011 Order [docket entry no. 39], which concluded that the Court possessed jurisdiction over Law's claims against Aetna. Having carefully considered the said Motion, the Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, this Court finds and orders as follows:

### I. Procedural History

Because the Court recently gave an account of the facts which underlie Plaintiff Law's claims in its previous Order, this Court will proceed directly to the arguments before it. The Court once again faces the question of whether it has the authority, pursuant to 28 U.S.C. § 1332(a), to adjudicate Law's claims with respect to Aetna. Aetna vigorously argues that while the Court was correct in finding that Law's claims against the Bureau of Navy Personnel ("BUPERS") sound in contract, Law lacks privity of contract with

Aetna, and therefore the only claims that can survive against it are those that sound in tort. Aetna then contends that it is entitled to derivative sovereign immunity with respect to Law's tort claims because, as the administrator of Law's Long Term Disability Benefits Plan ("Plan") [docket entry no. 1, exhibit A], it was acting on behalf of the United States.

Law, in response, requests that the Court refrain from addressing the issue of privity, believing that any finding in that respect would be best suited for a 12(b)(6) motion, and joins in Aetna's belief that at least some of his claims sound in tort. However, he refutes Aetna's assertion that it is entitled to derivative immunity with respect to these claims. After carefully considering these arguments, the Court finds no basis to alter its previous findings that (1) Law's claims against both Defendants arise out of the insurance contract and (2) the Court possesses jurisdiction over Law's claims against Aetna.

## II. Discussion

On a motion brought under Fed. R. Civ. P. 12(b)(1), which a court must consider before any other challenge, see Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994), a court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998)(quoting Nowak v. Ironworkers

2

Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)).  Under 12(b)(1), the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Lane v. Halliburton, 529 F.3d 548, 557, (5th Cir. 2008) (quoting Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). In that respect, the court's permissible inquiry is slightly broader in scope than the familiar 12(b)(6) analysis, where the court may only consider the documents either attached to or incorporated in the complaint. Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir. 1996). Further, the court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them,  Kaiser Aluminum & Chem. Sales, Inc., v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), and must review those facts in a light most favorable to the plaintiff. Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir. 1995); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991).

## 1. Whether Law can maintain an action against Aetna arising under the Long Term Disability Plan

In its earlier order, this Court determined that Law's claims against BUPERS were not properly before this Court. For purposes of determining whether the Tucker Act, and its jurisdictional requirements, controlled Law's action against BUPERS, the Court had

to decide if Laws's claims sounded in contract or tort. The Court held that Law's action primarily sounded in contract and ruled that, pursuant to the Tucker Act, the Court of Federal Claims possessed jurisdiction over all Law's claims against BUPERS.

It further rejected Aetna's contention that it was entitled to derivative immunity under the Tucker Act. Specifically, it found that the cases cited in support of Aetna's position arose under the Federal Tort Claims Act and stated that, given that "all of Law's claims arise out of the insurance contract," the Federal Tort Claims Act was inapplicable and Aetna was not entitled to derivative immunity. Picking up on the Court's language, Aetna now argues that if Law's claims are primarily contractual--which it contends they are not--then Law cannot maintain a suit against it because Law is not in privity with Aetna. The bases for Aetna's contention appear to be Law's failure to affirmatively allege that he had formed a contract with Aetna and the disclaimer contained in the services contract ("Services Agreement") between Aetna and BUPERS that there are no third party beneficiaries to the Agreement. See Services Agreement § 20.[1]

_____

[1] Aetna finds significance in the facts that (1) Law did not specifically allege that he had formed a contract with Aetna in the Complaint and (2) Law indicated in his latest memorandum that he anticipates amending his Complaint to include a third party beneficiary claim. In his Complaint, however, Law clearly alleged that both Defendants were responsible for a breach of contract. Further, Law attached his Long Term Disability Plan to the Complaint, in which Aetna was named as the Plan administrator. It was not necessary for Law to provide a detailed legal argument in

At this stage in the litigation, there is little doubt that Law has a right to pursue his claim against Aetna under the Plan. As a Plan beneficiary, Law certainly has the right to seek benefits under the Plan, and Aetna, as the Plan administrator, was required to, and did, make a claim determination under the Plan. First, Law was required to submit evidence and he did submit evidence of his disability to Aetna, not to the United States, pursuant to his disability Plan. See Am. Compl. at ¶ 23. Secondly, it was an Aetna representative who reviewed and denied his disability claim.  See id. at ¶ 24. Thirdly, it was Aetna, not the United States, that notified the Plaintiff of its decision to deny his claim for benefits and informed him of his right to appeal its decision--a step that required Law to submit to Aetna further evidence to support his claim. See id. at ¶ 25.  Finally, Aetna denied his administrative appeal. See id. at ¶ 25.

All actions of the Parties up to this point indicate that (1) Aetna is required to receive evidence from Law to support his claim; (2) Aetna is responsible for making a determination of benefits; and (3) Aetna is accountable on appeal for its previous decisions. It seems contrary to the Parties' previous course of dealing for Aetna to now disclaim any obligation to defend its decision to deny the claim now that it has reached this stage of

his Complaint in order to state a plausible claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

the litigation.  Based on these facts alone, which are all alleged in the Complaint, there is an adequate basis for Law to maintain his present action against Aetna. <u>See</u> <u>Halliburton</u>, 529 F.3d at 557 (citing <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007)).

Turning to the Services Agreement between Aetna and BUPERS, the Agreement provides more foundation for Law to maintain a suit in this Court against Aetna.[2] While the Agreement expressly states that there are no third party beneficiaries under the Agreement, it also contains language suggesting that Aetna is subject to an employee's suit for wrongful determination of benefits under the Plan. <u>See</u> Services Agreement § 15. Section 15 of the Services Agreement, entitled Defense of Claim Litigation, provides: "In the event of a legal action involving a claim for benefits under the Plan, Aetna U.S. Healthcare shall undertake the defense of such suit . . . ."  In its earlier brief, the Government, the other party to this Agreement, interpreted this provision to require Aetna to "undertake the defense of any legal action under the plan, provided there is no conflict between Aetna and the United States." <u>See</u> docket entry no. 16 at pg. 3. Aetna appears to have consented to defend all legal actions involving a claim for benefits under

---

[2] The Plan itself, which Law attached to his Complaint, incorporates the Services Agreement by reference, informing the employee that Aetna "will provide certain administrative services under the Plan as outlined in the Administrative Services Contract between Aetna and the Contractholder." <u>See</u> Plan at pg. 7.

the Plan, including the present suit brought by Law.

Law is merely proceeding in a manner that is both consistent with the previous actions of the Parties and, based on a reading of the Services Agreement, permissible under the Plan. Accordingly, the Court reaffirms its earlier finding that Law may maintain his action against Aetna arising out of the insurance contract. Since the Court has previously determined that the amount in controversy under the Plan exceeds the required statutory amount and that the Parties have diversity of citizenship, the Court finds that it possesses jurisdiction over Law's claim against Aetna. See 28 U.S.C. § 1332(a).

### 2. Whether Law's claims against Aetna should be transferred to the Court of Federal Claims

In its brief, Aetna states that, should the Court find that Law's claims against Aetna sound in contract, the prudent course of action would be to transfer Law's action to the Court of Federal Claims. In the July 12, 2011 Opinion, after considering the judiciousness of that course, this Court concluded that the Court of Federal Claims does not have jurisdiction over private parties. In reaching this decision, the Court cited Bowling v. United States for the proposition that the Court of Federal Claims lacked jurisdiction over private entities. 93 Fed. Cl. 551, 555 (Ct. Fed. Cl. 2010). Aetna challenges this conclusion, arguing that the Court's reliance on Bowling was inapposite, and instead offers "case law" of its own, which it believes provides sufficient

authority for the Court to reconsider this holding. Yet, the one case cited in support of its position concerns whether the Court of Federal Claims was the proper forum for a Back Pay Act suit against a government official acting in his official capacity. See Salla v. Califano, 499 F. Supp. 684, 685 (N.D. Ill. 1980) ("The complaint in this case names the Secretary of the Department of Health, Education and Welfare in his official capacity as defendant and it is clear to this court that plaintiff seeks no relief from the Secretary individually."). Aetna hardly qualifies as a government employee acting in an official capacity.

The fact remains that neither this Court nor Aetna has located any precedent suggesting that Law's claims against Aetna could be transferred to the Court of Federal Claims. We have found no instances where a private party, i.e., a non-government employee or official, has appeared as a named defendant in the Court of Federal Claims. Therefore, the Court declines Aetna's invitation to transfer Law's claims against it to the Court of Federal Claims.

### 3. Whether Aetna is entitled to derivative immunity with respect to Law's tort claims

Aetna's remaining argument is that it is immune from Law's state law tort claims. This argument appears to be contingent on the Court's finding that all Law's viable actions against Aetna sound in tort. Nevertheless, the Court will briefly address whether Aetna is entitled to derivative immunity as a fiscal intermediary or is immune from suit under the discretionary

8

function exception of the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2680.

In support of its fiscal-intermediary argument, Aetna maintains that the Court's analysis should turn on "'whether a judgment against [Aetna] would implicate the federal treasury . . . or whether the claims constitute a private cause of action arising out of tort or contract for which [Aetna] would be financially responsible.'" See docket entry no. 42 at pg. 4 (citing cases); docket entry no. 53 at pg. 7 (citing cases) (emphasis omitted). Aetna contends that because any judgment against it would be drawn from federal funds, the United States is the real party in interest and it should be immune from suit as a fiscal intermediary. See Services Agreement §§ 5, 6.

However, the cases on which Aetna relies for this proposition are factually distinguishable from the present case. For instance, in Shands Teaching Hospital & Clinics Inc. v. Beech Street Corporation, the court of appeals found that a third party administrator was entitled to immunity from a hospital's suit for "declaratory judgment concerning the rights and liabilities of the parties under implementing contracts for the state insurance plan." 208 F.3d at 1312. Central to the court's holding was the fact that state law mandated that the Department of Management Services, an entity of the state, retain "final decision-making authority over the existence of coverage or benefits under the plan," and the

plaintiff sought to circumvent that authority by suing a third party provider. Id. at 1312.

Likewise, the majority of cases involving fiscal intermediaries cited by Aetna, particularly the Medicare line of cases, concern a plaintiff's attempt to use a suit against a third party to avoid pursuing his claim through the state or federally created administrative process. See, e.g., Mantranga v. Travelers Ins. Co., 563 F.2d 677 (5th Cir. 1977); Kaiser v. Blue Cross of California, 347 F.3d 1107, 1115 (9th Cir. 2003). Indeed, the absence of a state or federal regulatory scheme governing the determination of benefits is a factor that counsels against this Court granting immunity to a third party. United States v. Deloitte & Touche, 381 F.3d 438, 443 (5th Cir. 2004) (stating that the absence of state regulations was a factor that weighed against the finding that the state was the real party in interest).

Here, no federal administrative scheme mandates that BUPERS retain any decision-making or interpretive authority with respect to its insurance plan. In fact, the opposite appears to be true. Unlike in Shands where the state retained its statutory non-delegable authority to make a final determination of claims arising under the state implemented insurance plan, here, BUPERS appears to have delegated all of its authority to Aetna to make final determinations regarding benefit claims, which includes the responsibility to defend against legal actions arising under the

Plan. See Services Agreement § 7 ("[BUPERS] hereby delegates to Aetna U.S. Healthcare authority to make determinations on behalf of [BUPERS] with respect to disability certifications and benefit payments under the Plan . . . ."). Because Aetna is vested with authority to make claim determinations, the Court finds that Law is not using his lawsuit against Aetna to impermissibly circumvent already established procedures for pursing his claim.

Further, the Court finds that this inquiry would ultimately weigh against granting immunity to Aetna since BUPERS's liability is limited by the terms of the Services Agreement. Law's state law tort claims against Aetna appear to fall squarely within the parameters of the contract between BUPERS and AETNA. In Section 12 of the Services Agreement, BUPERS has agreed to "pay the amount of Plan benefits included in any judgment or settlement in [a suit involving a claim for benefits under the Plan], but shall not be liable for any other part of such judgment or settlement, including but not limited to legal expenses and punitive damages, except to the extent provided in Section 13 below."[3] While the Court will permit the Parties to make arguments concerning the scope and effect of this provision,[4] because the Parties agreed in advance on

---

[3] Section 13, labeled Indemnification, requires BUPERS to indemnify and defend Aetna for "all claims, actions, expenses, and liabilities related to or arising from the Service Agreement or the Services in any way."

[4] The Court recognizes there is some dispute on how to interpret Sections 12 and 13 of the Services Agreement. But it is

11

how they will apportion liability in a suit arising under the Plan, Law's suit against Aetna cannot implicate federal funds beyond the amount to which the United States has already consented. Accordingly, the Court finds that Aetna does not quality for derivative sovereign immunity as a fiscal intermediary.

Lastly, Aetna incorrectly asserts that it is immune from suit under the FTCA because it was performing a discretionary act on behalf of the government. See 28 U.S.C.A. § 2680. The discretionary function exception of the FTCA, however, only applies to suits against the federal government, its employees, and agents--not independent contractors. See 28 U.S.C. § 2671 ("[T]he term 'Federal Agency' . . . does not include any contractor with the United States."). The Supreme Court has stated that "[the] critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" See United States v. Orleans, 425 U.S. 807, 814 (1976)(quoting Logue v. United States, 412 U.S. 521, 528 (1973)).

As stated in the facts above, BUPERS conferred its authority to Aetna to decide whether benefits are payable under the Plan. Further, while not dispositive of the issue, the Court notes that Section 16 of the Services Agreement defines Aetna's relationship

---

unnecessary, at this point in the litigation, for the Court to resolve this dispute.

with BUPERS primarily as an independent contractor, not an agent.
The Agreement states: "It is understood and agreed that Aetna U.S.
Healthcare is an agent only with respect to the issuance of claim
payments and an independent contractor with respect to all other
Services being performed pursuant to the Services Agreement."
Services Agreement § 16. This cause of action arises from Aetna's
performance of its obligation to determine whether benefits were
payable under the plan, not the issuance of payments, and thus,
according to the Services Agreement, Aetna was acting as an
independent contractor with respect to its final determination of
Law's claim.[5]

The fact that BUPERS delegated its authority for making
benefit determinations to an independent company that specializes
in insurance plans *and* the contract between the Parties defined
Aetna's relationship to BUPERS as an independent contractor, the
Court finds that Aetna was acting as an independent contractor.
Therefore, because independent contractors do not fall within the

---

[5] Aetna argues that interpreting the phrase "issuance of
payments" to mean the actual act of distributing funds is hyper-
literal. This Court disagrees. Such a reading is both literal and
consistent with the rest of the Services Agreement. See American
Heritage Dictionary 680 (Second College ed. 1991)(defining *issuance*
as: An act of issuing; issue; and *issue* as: An act or instance of
flowing, passing, or giving out; an act of circulating
distributing, or publishing by an official group.); see also
Service Agreement § 5 ("[BUPERS], by execution of this Services
Agreement, expressly authorizes Aetna U.S. Healthcare to *issue* and
accept such checks on behalf of [BUPERS] for the purpose of payment
of Plan Benefits . . . ." (emphasis added)).

scope of protection afforded the government and its agents under the FTCA, it unnecessary to determine whether the underlying act Aetna was performing was discretionary.  There is no question that Aetna is not entitled to immunity from Law's state tort law claims under the FTCA.

### III. Conclusion

This Court has already concluded that Law's claims against BUPERS may be transferred to the Court of Federal Claims.  28 U.S.C. § 1631 ("Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other court in which the action or appeal could have been brought at the time it was filed."); Awad, 2001 WL 741638 at *8 (transferring claims governed by the Tucker Act from the Northern District of Mississippi to the Court of Federal Claims). Moreover, the Court again finds that this entire matter cannot be transferred to the Court of Federal Claims because that Court does not have jurisdiction over Law's claims against Aetna.

In its July 12, 2011 Order, the Court gave Law ten (10) days from the date of entry of that Order to indicate to the Court if he would prefer that his claims against the United States be severed and transferred to the Court of Federal Claims or dismissed without prejudice. The Court also allotted ten (10) days for the Defendants to present their positions on these potential courses of action.

14

Pursuant to that Order, Law has represented to the Court that he prefers it to dismiss his actions against the United States without prejudice for re-filing in the proper court. The Court deems Aetna to have presented its position on this issue in its Motion for Reconsideration, and it has heard nothing from the United States. Accordingly, pursuant to Law's earlier representation to this Court, the Court will dismiss Law's claims against the United States without prejudice, permitting Law to re-file his claims against the United States in the Court of Federal Claims if he so chooses.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Aetna's Motion for Reconsideration [docket entry no. 41] is **DENIED.**

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss [docket entry no. 15] is **GRANTED.** The Plaintiff's claims against the United States shall be dismissed without prejudice.

**SO ORDERED,** this the 26th day of September, 2011.


        /s/ David Bramlette
**UNITED STATES DISTRICT JUDGE**

15